**Freda TAULBEE, Plaintiff–Appellee,**

v.

**WAL–MART STORES, INC.,
Defendant–Appellant.**

No. 99–6690.

United States Court of Appeals,
Sixth Circuit.

Feb. 21, 2001.

Before DAUGHTREY and GILMAN, Circuit Judges; HEYBURN, District Judge.*

HEYBURN, District Judge.

Freda Taulbee sued in negligence after she tripped over a ladder in a Wal–Mart store, sustaining injuries to her neck. After a trial, the jury found that Wal–Mart failed to exercise reasonable care, but that Plaintiff's neck injuries were not caused by her fall. Taulbee appeals this verdict, arguing that it was against the weight of the evidence and that the district court erred in certain evidentiary rulings. For the reasons explained below, we AFFIRM.

I.

The denial of a motion for a new trial is reviewed under an abuse of discretion standard: "a definite and firm conviction [on the part of the reviewing court] that the court below committed a clear error of judgment." *Holmes v. City of Massillon,* 78 F.3d 1041, 1045–46 (6th Cir.1996) (quoting *Balani v. Immigration and Naturalization Serv.,* 669 F.2d 1157, 1160 (6th Cir.1982)). In diversity cases, the district court applies federal law to determine whether the verdict was against the great weight of the evidence. *See Morales v. American Honda Motor Co., Inc.,* 151 F.3d 500, 506 (6th Cir.1998).

Taulbee's first argument—that the district court erred by denying her motion for a new trial—is actually a derivative of her second argument—that the district court erred in failing to find that the jury's verdict was against the weight of the evidence. Under FED.R.CIV.P. 59(a), a new trial may be granted after a jury verdict "for any of the reasons for which new trials have heretofore been granted in ac-

tions at law in the courts of the United States." A new trial is required when a jury's verdict is seriously erroneous as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party because of prejudice or bias. *Holmes,* 78 F.3d at 1046. Here, the only possible ground for a new trial is that the verdict was against the weight of the evidence.

In order to find that a jury's verdict was against the weight of the evidence, a judge must find that the verdict was unreasonable. *Id.* at 1047. The standard is rigorous because in finding that a jury's verdict was against the weight of the evidence, the judge "has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury." *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir.1967) (quoting *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3rd Cir. 1960)). In order to avoid a potential denigration of the jury system and to protect the litigant's right to a jury trial, the *Holmes* court cautioned that any trial court decision to overturn a verdict because it was against the weight of the evidence must be "closely scrutinized." *Holmes,* 78 F.3d at 1047.

■ There appears to be sufficient evidence in the case before us to allow a reasonable jury to find that Taulbee's neck injury and its resulting pain was not caused by her fall at Wal–Mart. Dr. Shraberg testified that he saw no evidence of a significant lesion or disorder that was caused by her fall at Wal–Mart. The 1984 letter addressed to Dr. Doepke that alleges Taulbee complained of a pinched nerve in her neck provides some evidence of pre-

* The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

existing injury related to Taulbee's neck. Moreover, Taulbee suffered prior health problems that could be responsible for the general pain she experienced after the accident: the falls at work in 1992 and 1997, her history of migraine headaches, the car accident in the 1980s, Lyme's disease, and the degenerative arthritis described by Dr. Gilbert. Each of Taulbee's own doctors—Smith, Vansant, and Gilbert—stated that they could not state to a medical probability or certainty that the pain she attributes to her fall at Wal–Mart was actually caused by that fall.

To be sure, the evidence supporting the jury's verdict is not strong. Indeed, much of the evidence seems to fall in favor of plaintiff. Three well-credentialed doctors who treated Taulbee on a regular basis believed she had an actual injury to her neck that was caused by her fall. One doctor, hired by Wal–Mart, found from a single examination conducted more than eighteen months after the accident that Taulbee's injuries were not caused by the accident. However, the jury was free to weigh the credibility of all witnesses in reaching their verdict. It is fair to characterize plaintiff's testimony as often inconsistent and not always forthcoming. This could have affected the jury if it had concerns about her truthfulness. We need not speculate why a jury reached its result, only whether it did so reasonably and on the basis of sufficient evidence. We conclude that the district court did not err in finding that the jury's verdict was not against the weight of the evidence.

## II.

Plaintiff argues that the district court erred on two evidentiary issues: admitting the 1984 letter addressed to Dr. Doepke and prohibiting Dr. Smith from making reference to the American Medical Association ("AMA") guidelines in his testimony.

Each of these arguments presents an interesting issue. However, neither has sufficient merit to warrant reversal.

We review a district court's decision to exclude or include evidence for abuse of discretion. We ask "whether any reasonable person could agree with the district court." *Rye v. Black & Decker Mfg. Co.,* 889 F.2d 100, 101 (6th Cir.1989) (quotations omitted). "Heavy reliance is placed on the discretion of the trial judge" and this Court must give the trial judge's decision great latitude. *Id.* at 101–02 (quotations omitted).

### A.

■ Dr. Doepke was one of Ms. Taulbee's treating physicians in the mid–1980s. On November 20, 1984, a doctor at the Kentucky Division for Disability Determination sent Dr. Doepke a letter seeking information relating to Ms. Taulbee's application for disability benefits. The letter contains the following sentence: "The applicant alleges disability from 11–14–84 due to pinched nerve in neck, chronic pain in side due to multiple surgeries (gallbaldder [*sic* ], ovary) and bladder." To be precise, the letter does not purport to be the writer's opinion of Ms. Taulbee's disability; rather, it repeats Ms. Taulbee's own allegations of impairment contained in her application for disability benefits. Wal–Mart used the letter for two purposes: to show that Ms. Taulbee had a pinched nerve in her neck in 1984, several years prior to the accident, and to impeach her denial of previous medical problems at trial. The letter presents two potential hearsay problems because it contains two out-of-court statements—Ms. Taulbee's allegation and the doctor's recitation of her allegation—offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). Even in retrospect, this letter presents difficult analytic problems.

Ms. Taulbee's allegation, however, is not hearsay because it is an admission by a party-opponent. FED. R. EVID. 801(d)(2)(A). The statement qualifies as an admission under 801(d)(2)(A) even though the statement was not against Ms. Taulbee's interest when made. *United States v. Turner*, 995 F.2d 1357, 1363 (6th Cir.1993).

The doctor's letter is hearsay under 801(c) and does not quite meet the requirements of two specific hearsay exceptions. The letter might have qualified under the 803(6) business records exception, but Wal–Mart proffered no testimony about the recordkeeping practices of the Division of Disability Determination from the custodian or other qualified witness or any proof that the record was made by a person with knowledge. *See United States v. Mahar*, 801 F.2d 1477, 1493 (6th Cir.1986); *Calhoun v. Baylor*, 646 F.2d 1158, 1162 (6th Cir.1981). The letter likewise does not quite qualify under 803(8), the public records exception, because it is not an observation pursuant to a duty imposed by law, 803(8)(B), nor is it a factual finding from an investigation, 803(8)(C). Instead, the letter merely transmits statements made by Ms. Taulbee as part of a request for information.

Nevertheless, the document does possess the elements of reliability that these two exceptions seek to accommodate. The letter was a request for information from a state agency undertaking a routine investigation of a disability claim. It merely repeats Ms. Taulbee's written statements from her disability application. The ministerial nature of the correspondence gives one confidence that it transcribed Ms. Taulbee's application accurately. If the letter had contained the opinion of an unknown person, one could not be so confident of its reliability. The state, however, would have little or no reason to exagger-. ate Ms. Taulbee's claims. Under FED. R. EVID. 807, admission was proper if the general purposes of the evidence rules would be served by admission. Since the document, on its face, demonstrated very high indications of reliability and the letter was apparently the best evidence of Ms. Taulbee's allegations relating to neck pain in 1984, the trial court did not abuse its discretion in admitting the document.

### B.

Taulbee also argues that the court erred by not allowing Dr. Smith, her chiropractor, to testify using AMA guidelines to describe her impairment. Taulbee does not cite to a page number from the appendix in her brief. Wal–Mart's response to this motion asserts that it is a reference to part of an oral ruling by the court, the transcript of which is not included in the appendix. In his Memorandum and Order of November 19, 1999, Judge Hood makes reference to this issue, holding that "such testimony regarding AMA guidelines should be presented by a physician as opposed to a chiropractor." Nevertheless, at pages 228 and 236 of the Joint Appendix, Dr. Smith did in fact testify using the AMA guidelines. The issue therefore appears to be moot.

Even if the district court did restrict this testimony, it would not amount to an abuse of discretion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Trial courts play an important gatekeeping function to ensure the reliability of expert testimony. *See, e.g., Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Without more evidence in the record, we cannot say that the district court abused its discretion by disallowing the use of AMA guidelines by one without a medical degree.

### III.

Taulbee finally argues that the trial court erred by limiting her counsel's closing argument. Trial courts have broad discretion to control closing argument. *See United States v. Poindexter*, 942 F.2d 354, 359 (6th Cir.1991); *United States v. Dye*, 508 F.2d 1226, 1231(6th Cir.1974). From the record, it is not clear to what extent the district court limited counsel's discussion. However, we do see that the description of minute medical history was time consuming and of little clear value. To limit further discussion was not an abuse of discretion.

Therefore, we AFFIRM the district court in all respects.